IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THOMAS G. DEVORE,<br><br>Plaintiff,<br><br>v.<br><br>TONY MCCOMBIE,<br><br>Defendant. | Case No. 1:25-cv-00323<br><br>Judge Mary M. Rowland |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Thomas G. DeVore has brought this Section 1983 action against Defendant Tony McCombie for violations of the First Amendment. Before the Court now is Defendant's Motion to Strike and Dismiss Plaintiff's Complaint. [12]. For the reasons stated herein, Defendant's Motion to Strike and Dismiss is granted.

**I. Background**

The following factual allegations taken from the operative complaint [1] are accepted as true for the purposes of the motion to dismiss. *See Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021).

Defendant has been an Illinois State Representative since January 11, 2017. [1] ¶ 15. On May 19, 2015, when first running for state representative, Defendant created a Facebook page[1] titled "Tony McCombie for State Representative 71st District" (the "2015 Facebook Page"). *Id.* Defendant later changed the name of the 2015 Facebook Page to "Tony McCombie," which appears as the page name today. *Id.* The 2015

---

[1] This Facebook page appears at www.facebook.com/McCombieforIllinois.

1

Facebook Page has over 17,000 followers and includes a cover page labelled "Tony McCombie State Representative." *Id*. Defendant utilizes the 2015 Facebook Page to discuss and interact with users about government business. [1] ¶¶ 1-2, 15-17. Hundreds of Illinois citizens participate in the comments sections of the 2015 Facebook Page, expressing opinions, asking questions, and engaging in debate. [1] ¶ 3. Defendant administers the 2015 Facebook Page and has final say on whether individuals are to be blocked from interacting with the page and whether certain comments are to be deleted. [1] ¶ 10.

On January 11, 2023, Defendant was appointed to serve as the Illinois House Minority Leader. [1] ¶ 16. Defendant continued to utilize the 2015 Facebook Page to discuss and interact with users about government business after her appointment. [1] ¶¶ 2, 16.

On September 16, 2024. Defendant created a second Facebook page[2] titled "Illinois House Minority Leader Tony McCombie" (the "2024 Facebook Page"). [1] ¶ 18. Yet despite the creation of the 2024 Facebook Page, Defendant continued to utilize the 2015 Facebook Page to discuss and interact with users about government business. [1] ¶ 21.

At some point during Defendant's tenure as the Illinois House Minority Leader, Plaintiff posted comments on the 2015 Facebook Page critical of Defendant's political actions. [1] ¶¶ 4, 6, 27. In response, Defendant deleted those posts and permanently banned Plaintiff from the 2015 Facebook Page. *Id*.

---

[2] This Facebook page appears at www.facebook.com/IllinoisHouseMinorityLeader

On January 13, 2025, Plaintiff brought this action against Defendant in her individual and official capacities for violations of the First Amendment. [1] ¶¶ 10, 30. Plaintiff alleges that the 2015 Facebook Page is a "public forum" and thus Defendant's actions of deleting his comments and banning him are content-based regulations of speech that violate the First Amendment. [1] ¶¶ 4, 30. Plaintiff seeks damages, a declaratory judgment that Defendant's conduct violates the First Amendment, and injunctive relief prohibiting Defendant from continuing to engage in speech regulation on the 2015 Facebook Page. [1] ¶¶ 6, 10, 30.

On March 4, 2025, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendant moved to dismiss Plaintiff's Complaint for lack of jurisdiction and failure to state a claim. She also is moving to strike Plaintiff's claim for money damages. [12].

## II. Standard

"To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)); *see also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief"). A court deciding a Rule 12(b)(6) motion "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] all well-pleaded facts as true, and draw[s] all reasonable inferences in the plaintiff's

3

favor." *Lax*, 20 F.4th at 1181. However, the court need not accept as true "statements of law or unsupported conclusory factual allegations." *Id.* (quoting *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021)). "While detailed factual allegations are not necessary to survive a motion to dismiss, [the standard] does require 'more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action to be considered adequate.'" *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019) (quoting *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016)).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Deciding the plausibility of the claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

A Rule 12(b)(1) motion to dismiss requires a court to dismiss any action over which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). On a motion to dismiss under Rule 12(b)(1), where the motion challenges the sufficiency of the allegations of subject matter jurisdiction, the court must accept as true all well-pled allegations of the complaint, drawing all reasonable inferences in the plaintiff's favor. *Evers v. Astrue*, 536 F.3d 651, 656 (7th Cir. 2008).

### III. Analysis

Defendant makes several arguments in support of her motion. She argues that Section 1983 does not authorize suits against state officials in their official capacity.

4

She also contends that Plaintiff fails to state a cause of action against her in either her individual or official capacity. She further argues that qualified immunity shields her from damages under Section 1983 and that Plaintiff's monetary damages request should be stricken.

The Court will first address Defendant's arguments related to official capacity. The Court will then turn to Defendant's arguments related to individual capacity.

Before proceeding, however, the Court notes that Plaintiff's response brief, [15] at 9-11, introduces a Petition Clause argument for the first time. It is an "axiomatic rule that a plaintiff may not amend his complaint in his response brief." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011). Count I of the Complaint clearly states that the Defendant is being sued only for her "content-based regulation of speech" on the 2015 Facebook Page. [1] ¶ 30. As such, the Court will not consider the Petition Clause argument in its analysis.

### A. Official Capacity Claim

Plaintiff's official capacity claim seeks damages, declaratory relief, and injunctive relief for violations of the First Amendment. Defendant moves to dismiss on two grounds. She first argues that Section 1983 does not authorize official capacity suits against state officials and thus the entirety of Plaintiff's official capacity claim must be dismissed for lack of subject matter jurisdiction. She additionally argues that Plaintiff's Section 1983 claim fails to state a cause of action against her in her official capacity.

Defendant's first point is only partially correct. While Section 1983 suits seeking *damages* against a state official in her official capacity are deemed suits against the state and barred by the Eleventh Amendment, "official-capacity actions for prospective relief are not treated as actions against the State" and thus are not barred by the Eleventh Amendment. *Kentucky v. Graham,* 473 U.S. 159, 167 n.14. (1985) (citing *Ex parte Young*, 209 U.S. 123 (1908)); *Marie O. v. Edgar*, 131 F.3d 610, 615 (7th Cir. 1997) ("suits against state officials seeking prospective equitable relief for ongoing violations of federal law are not barred by the Eleventh Amendment under the *Ex parte Young* doctrine."). Here, Plaintiff's requests for declaratory and injunctive relief are properly characterized as prospective as they seek (1) a declaration that Defendant engages in content-based regulation of speech on the 2015 Facebook Page, and (2) an injunction preventing Defendant from continuing such conduct. *See e.g., Attwood v. Clemons*, 818 F. App'x 863, 868 (11th Cir. 2020) (characterizing a declaration that defendant engaged in viewpoint discrimination by blocking plaintiff from Facebook and an injunction to unblock plaintiff as prospective); *see also Driftless Area Land Conservancy v. Valcq*, 16 F.4th 508, 521 (7th Cir. 2021) ("[d]eclaratory and injunctive relief are paradigmatic examples of prospective relief"). So, though the Eleventh Amendment jurisdictionally bars Plaintiff's official capacity claim for damages, it does not bar Plaintiff's official capacity claim for prospective relief.

Nevertheless, a plaintiff may only seek prospective relief on an official-capacity claim if he sufficiently alleges that the entity of which the government official is an

agent has a policy or custom that "played a part in the violation of federal law." *Graham*, 473 U.S. at 166. Plaintiff has not alleged *any* facts in his Complaint indicating that a policy or custom of the state caused the First Amendment violations. Plaintiff's official capacity claim for prospective relief thus fails to state a cause of action and is dismissed.

### B. Individual Capacity Claim

Plaintiff also brings an individual capacity claim seeking damages, declaratory relief, and injunctive relief for the First Amendment violations. Citing the Supreme Court's recent decision *Lindke v. Freed*, 601 U.S. 187 (2024), Defendant argues that Plaintiff's individual capacity claim fails to adequately allege state action as required by Section 1983. The Court agrees.

Liability under Section 1983 attaches only to persons acting "under color of law." 42 U.S.C. § 1983 ("[e]very person who, under color of any statute, ordinance, regulation, custom, or usage … subjects, or causes to be subjected, any ... person ... to the deprivation of any rights."). While state action is "easy to spot" "in the run-of-the-mill case," sometimes "the line between private conduct and state action is difficult to draw." *Lindke,* 601 U.S. at 195. This is especially true in the context of social media websites like Facebook, where the line between a public official's personal communications and official communications "is often blurred." *Id*. at 197.

To bring clarity to this issue, the Supreme Court in *Lindke* announced a two-prong standard for determining whether a public official's social media activity constitutes state action for purposes of Section 1983. *Lindke's* first prong asks whether the public

7

official possesses "actual authority rooted in written law or longstanding custom to speak for the State." *Id*. at 201. That authority "must extend to speech of the sort that caused the alleged rights deprivation." *Id*. In other words, there "must be a tie between the official's authority and the gravamen of the plaintiff's complaint." *Id*. at 199 (citation omitted). The scope of an official's authority can be determined based on "relevant statute, ordinance, regulation, custom, or usage." *Id*. at 200. And in some cases, "a grant of authority over particular subject matter may reasonably encompass authority to speak about it officially." *Id*.

Assuming actual authority exists, *Lindke's* second prong asks whether the public official "purported to exercise that authority when [s]he spoke on social media." *Id*. at 198. The context of an official's speech is critical in this step. For example, a mayor likely invokes state authority if he posts "on his Facebook page: 'Pursuant to Municipal Ordinance 22.1, I am temporarily suspending enforcement of alternate-side parking rules.'" *Id*. at 203. By contrast, if the mayor merely shares on his Facebook page otherwise available information such as a link to a parking announcement on his city's webpage, "it is far less likely that he is purporting to exercise the power of his office." *Id*. Because categorizing social media posts into private versus official action "is a fact-specific undertaking in which the post's content and function are the most important considerations" "it is crucial for the plaintiff to show that the official is purporting to exercise state authority in specific posts." *Id*.

Upon review, Plaintiff's Complaint does not allege sufficient facts under either of *Lindke's* prongs. As to *Lindke's* first prong, Plaintiff has not identified any specific

8

law, regulation, or otherwise vesting authority in Defendant to speak on the state's behalf in connection with speech of the sort that caused the alleged First Amendment violations. While presumably Defendant's dual roles as Illinois State Representative and House Minority Leader vests her with *some* type of authority to engage with citizens (though Plaintiff has not identified that authority), Plaintiff "must show more than that [Defendant] had some authority to communicate with residents on behalf of [the state]." *Id*. at 199. Instead, the "alleged censorship must be connected to speech on a matter within [the Defendant's] bailiwick." *Id*. While Plaintiff alleges that Defendant has utilized the 2015 Facebook Page to discuss "government business" "in relation to her roles as [Illinois] State Representative [and] House Minority Leader," he fails to provide sufficient facts as to whether those discussions encompassed specific topics within Defendant's actual speaking authority. [1] ¶¶ 1-3, 15-17. Without such details, Plaintiff fails to meet *Lindke's* first prong.

The Complaint also fails *Lindke's* second prong. "[A]n official does not necessarily purport to exercise [her] authority simply by posting about a matter within it." *Lindke*, 601 U.S. at 203. As a private citizen with her own constitutional rights, Defendant is free "to speak about public affairs in [her] personal capacit[y]." *Id*. For example, she "might post job-related information for any number of personal reasons, from a desire to raise public awareness to promoting [her] prospects for reelection." *Id*. It is only when Defendant specifically invokes her actual authority as state legislator and House Minority Leader do her Facebook posts become state action. Generalized accusations that Defendant posted about "government business" on the

2015 Facebook Page, even if those posts were "in relation to her roles as [Illinois] State Representative [and] House Minority Leader," are thus insufficient to show that Defendant exercised the power of either of her offices when making those posts. [1] ¶¶ 1-3, 15-17. Without identifying specific Facebook posts in which Defendant purported to exercise state authority, the Complaint cannot meet *Lindke's* second prong[3].

Because Plaintiff has not set forth sufficient factual allegations that Defendant (1) possessed actual authority to speak on the state's behalf in connection with her speech on the 2015 Facebook Page, and (2) purported to exercise that authority when she made specific posts on the 2015 Facebook Page, the Complaint fails to adequately allege state action as required by Section 1983. Plaintiff's individual capacity claim against Defendant must therefore be dismissed[4].

## IV. Conclusion

For the stated reasons, Defendant's Motion to Strike and Dismiss Plaintiff's Complaint [12] is granted. The Complaint is dismissed without prejudice.

---

[3] The Court recognizes that the 2015 Facebook Page indicates that the entity responsible for the page is "McCombie for Illinois," which *may* entitle Defendant to "a heavy (though not irrebuttable) presumption that all of the posts on [her] page were personal." *Lindke*, 601 U.S. at 202. That presumption, however, can be overcome with "significant evidence indicating that a post is official." *Id.*

[4] Defendant argues in the alternative that qualified immunity shields her from suit for damages under Section 1983. "Qualified immunity is an individual defense available to each individual defendant in his individual capacity." *Bakalis v. Golembeski*, 35 F.3d 318, 326-27 (7th Cir. 1994). Because the Court concludes that Plaintiff's individual capacity claim does not sufficiently allege state action to survive dismissal, the Court need not address Defendant's qualified immunity argument at this time.

Defendant's request to strike Plaintiff's request for monetary damages sought in connection with his official capacity claim is granted. The Court will allow Plaintiff to file an amended complaint if he can cure the deficiencies as discussed in this order. Plaintiff should file a First Amended Complaint on or before October 6, 2025.

E N T E R:

Dated: September 22, 2025

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge