**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| THOMAS G. DEVORE, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 1-25-cv-00323 |
| TONY MCCOMBIE, State Representative and Illinois House Minority Leader, | ) | Honorable Mary M. Rowland |
| Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendant Tony McCombie respectfully submits this memorandum of law in support of her Motion to Dismiss Plaintiff Thomas G. DeVore's First Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1, 6) and 12(f). For the reasons set forth below, Plaintiff's First Amended Complaint must be dismissed with prejudice.

## I. INTRODUCTION

On January 13, 2025, Plaintiff filed a Complaint ("Dkt. #1") alleging that Illinois State Representative of the 89th District and Illinois Republican House Minority Leader Tony McCombie ('Defendant") violated his First Amendment rights by blocking and deleting his comments on the "Tony McCombie" Facebook page ( hereinafter, "Campaign Forum"). Dkt. #1. Defendant filed a motion to dismiss the Complaint which was granted by this Court. Dkt. #'s 13, 21. Plaintiff was given leave to file an amended complaint if he could cure the deficiencies identified in the court's order. Dkt. #21, §IV, pg. 11.

The allegations in his First Amended Complaint (Dkt. #22) are nearly identical[1] to his Complaint (Dkt. #1). The only major difference is the addition to the First Amended Complaint of a Section titled "Leader McCombie's Facebook Posts." Dkt. #22, ¶¶23-48. Paragraphs 25-44 in this new Section describe twenty Facebook posts made on the Campaign Forum page between May 28, 2021 and June 18, 2025. Dkt. #22, ¶¶25-44. Paragraphs 25-44 of the First Amended Complaint incorporate Exhibits A–T which appear to be copies of the described Facebook posts on the Campaign Forum page. Dkt. #22-1, pg. 1-40. According to Plaintiff, these Facebooks posts, Exhibits A-T, demonstrate that the Campaign Forum page has a policy or practice of Defendant using the page to communicate official business with her constituents. Dkt. #22, ¶¶23-24. Despite the addition of paragraphs 23-44 and Exhibits A-T to the First Amended Complaint, it fails to cure the deficiencies previously identified in the Court's order.

## II LEGAL STANDARD

"To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)); *see also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief"). A Rule 12(b)(1) motion tests the Court's power to hear a case, and dismissal is required if subject matter jurisdiction is lacking. Fed. R. Civ. P. 12(b)(1)

[1] The allegations in paragraphs 1-22 in the original Complaint (Dkt. #1) and First Amended Complaint (Dkt. #22) are identical except for minor changes in paragraphs 4, 15, and 16. Paragraph 4 changed words "In at least one instance" to "Additionally." Paragraphs 15 and 16 changed "17,000 followers" (Dkt. #1) to "20,000 followers" (Dkt. # 22). The allegations in paragraphs 23 to 30 in the original Complaint (Dkt. #1) are identical to paragraphs 49-56 in the First Amended Complaint (Dkt. #22) except paragraph 53 of the First Amended Complaint (Dkt. #22) added this sentence: "Additionally, Devore can no longer view the updates provided by Defendant on her public forum."

A court deciding a Rule 12(b)(1) or 12(b)(6) motion "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] all well-pleaded facts as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Able Masonry Dev. Co. v. Hastings Mut. Ins. Co.*, 24 CV 1338, 2024 WL 2209346, at *2 (N.D. Ill. May 16, 2024); *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021). The court need not accept as true "statements of law or unsupported conclusory factual allegations." *Id.* "While detailed factual allegations are not necessary to survive a motion to dismiss, [the standard] does require 'more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action to be considered adequate.'" *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019) (quoting *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016)).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Deciding the plausibility of the claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

## III. JUDICIAL NOTICE

Pursuant to FRE Rule 201(b), the court may take judicial notice of a matter that is not subject to reasonable dispute when it:

> (1) is generally known within the trial court's territorial jurisdiction; or
>
> (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.

A court may "take judicial notice of historical documents, documents contained in the public record, and reports of administrative bodies...." as well as government documents, including those available from reliable sources on the Internet. *E.K.D. ex rel. Dawes v. Facebook, Inc.*, 885 F. Supp. 2d 894, 904 (S.D. Ill. 2012); *Menominee Indian Tribe of Wis. v. Thompson,* 161 F.3d 449, 456 (7th Cir.1998).

*See Bova v. U.S. Bank, N.A.,* 446 F.Supp.2d 926, 930 n. 2 (S.D.Ill.2006) (collecting cases). Moreover, a court's consideration of judicially noticed documents does not convert a motion to dismiss into a motion for summary judgment. *Henson v. CSC Credit Services*, 29 F.3d 280, 284 (7th Cir. 1994); *E.K.D. ex rel. Dawes v. Facebook, Inc.*, 885 F. Supp. 2d 894, 904 (S.D. Ill. 2012); *Menominee Indian,* 161 F.3d at 456. Indeed, a court need not accept as true allegations contradicted by judicially noticeable facts. See *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). *Young v. Greystar Real Estate Partner*s, LLC, 3:18-CV-02149-BEN-MSB, 2019 WL 4169889, at *3 (S.D. Cal. Sept. 3, 2019)

Cited herein are links for the Campaign Forum. The main link for the Campaign Forum e is cited by Plaintiff in his First Amended Complaint. See: Dkt. #22, ¶15. Because the link for the Campaign Forum is specifically cited in the First Amended Complaint, the Campaign Forum can be viewed on the internet by the court; it is part of the pleadings and central to Plaintiff's claim. For this same reason, this Court may also take judicial notice of sections of the Campaign Forum including exhibits 1-4 and 6-9 attached to Defendant's Motion to Dismiss Plaintiff's Initial Complaint. See: Dkt #'s 13-1 to 13-4 and Dkt #'s 13-6 to 13-9. See, e.g., *Id. Wright v. Buzzfeed, Inc.,* No. 2:18-cv-02187-CAS (AFMx), 2018 WL 2670642, at *1 n.1 (C.D. Cal. June 4, 2018), and *Miller v. Easy Day Studios Pty Ltd.*, 20CV02187-LAB-DEB, 2021 WL 4209205, at *2 (S.D. Cal. Sept. 16, 2021)(where social media accounts can be judicially noticed if specifically referenced in the Complaint) and *Suarez v. AbbVie, Inc.*, 503 F. Supp. 3d 711, 721 (N.D. Ill. 2020) (taking judicial notice of blogs and website publicly available before the filing of the lawsuit).

Additionally, this Court may take judicial notice of Exhibit 5 filed with the Motion to Dismiss Plaintiff's Complaint, which is information on file with the Illinois State Board of Election pertaining to McCombie for Illinois' registration as a candidate political committee. See: Dkt. #13-5. This Exhibit is a government record available on the State Board of Election's website at:

https://www.elections.il.gov/campaigndisclosure/CommitteeDetail.aspx?ID=jPIIgbtZWN5N1a%2fraVA%2bvw%3d%3d

## IV. ARGUMENT

### A. Plaintiff Lacks Standing because the First Amended Complaint Fails to Plead a Concrete Injury or a Causal Connection.

To invoke federal jurisdiction under Article III, a plaintiff must establish standing by demonstrating: (1) an injury in fact that is concrete and particularized and actual or imminent; (2) a causal connection between the injury and the defendant's conduct; and (3) a likelihood that the injury will be redressed by a favorable decision. *Parents Protecting Our Children, UA v. Eau Claire Area Sch. Dist.*, 95 F.4th 501, 505 (7th Cir. 2024) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)), *cert. denied*, 145 S. Ct. 14 (2024). The burden rests squarely on the plaintiff to establish standing. *Id.*

The First Amended Complaint fails to meet this fundamental requirement. Although Plaintiff attaches Exhibits A–T and references them generally, the pleading contains only conclusory statements about any purported harm and does not allege facts demonstrating a concrete or particularized injury traceable to Defendant's conduct. Specifically, Plaintiff does not allege:

- The dates or approximate dates he posted comments on the Campaign Forum;
- The dates or approximate dates when those comments were allegedly deleted or when he was allegedly blocked from the page; or
- The specific content of Plaintiff's comments, or the content of Leader McCombie's posts that allegedly prompted those comments.

Without these basic factual details, Plaintiff cannot show either an *injury in fact* or the required *causal connection* between Defendant's conduct and any alleged harm. See *Lujan*, 504 U.S. at 561; *Parents Protecting Our Children*, 95 F.4th at 505 (standing cannot rest on speculative or conclusory allegations). Without factual allegations connecting Defendant's conduct to Plaintiff's alleged injury, the claim fails

the injury in fact and causation requirements of Article III standing. Without standing, this Court lacks subject-matter jurisdiction, and the First Amended Complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).

**B. The First Amended Complaint Fails to Allege a Cause of Action Under Section 1983.**

Even assuming arguendo that Plaintiff could establish standing, the First Amended Complaint fails to allege a cause of action required for a Section 1983 claim.

***1. The First Amended Complaint does not Cure the Deficiencies with the Official Capacity Claim, No Policy or Custom Causation is Plead.***

For the official capacity claim against Defendant, Plaintiff must plead facts indicating that a policy or custom of the state caused the alleged First Amended violation. Dkt. #21, §III(A), pg. 7. The First Amended Complaint fails to do so. The claim should be dismissed with prejudice; Plaintiff has failed to cure the deficiency with the Official Capacity Claim.

**2. *The First Amended Complaint Fails to Cure the Deficiencies with the Individual and Official Capacity Claims; No State Action is Plead.***

In the context of social media First Amendment claims, a public official's social media activity provides protection to a viewer or commenter only when a social media post constitutes a state action. *Lindke v Freed*, 601 U.S. 187, 194 (2024). A state action occurs only when the following two prong test is satisfied: (1) the poster had actual authority to speak on the State's behalf, *and* [emphasis added] (2) the poster purported to exercise that authority when speaking on social media. *Lindke,* at 198. The first prong, authority to speak on the State's behalf, requires that "the conduct allegedly causing the deprivation of a federal right be fairly attributable to the State." *Lindke,* at 198; *Lugar v Edmondson Oil Co*., 457 U.S. 922, 937 (1982). An act is not attributable to a State unless it is traceable to the State's power or authority. *Lindke,* at 198. Private action—no matter how "official" it looks—lacks the necessary lineage. *Id.* The state must authorize and entrust the individual to make posts and register citizen concerns and be "responsible for the specific conduct of which the plaintiff complains."

*Lindke,* at 198-199. In fact, a state official does not have authority from a state unless a statute, ordinance, or regulation authorizes an official to speak on the State's behalf. *Lindke,* at 200. Additionally, state authority may derive from custom and usage but only when the "persistent practices of state officials" are "so permanent and well settled" that they carry the "force of law." *Id.*

*a. The First Amended Complaint does not plausibly allege actual authority.*

Plaintiff attached Exhibits A–T and added paragraphs 23-48 to the First Amended Complaint in attempt to cure his failure to adequate plead Lindke prong 1; that Defendant had actual authority to speak on behalf of the state. According to the First Amended Complaint, these additions demonstrate that Defendant used the Campaign Forum page to communicate with constituents about legislative and governmental matters, asserting that this reflects a practice or custom of exercising official authority through the page. Dkt. #22, ¶¶ 23-24.

Even assuming, arguendo, that Exhibits A–T and added paragraphs 25-44 reflect communications touching upon government business, these additions to the First Amended Complaint do not cure the deficiencies in the Court's order dismissing the Original Complaint. They do not demonstrate that Defendant had state authority to make these Facebook posts. Plaintiff's exhibits, detailed in summarized in Appendix A, consist primarily of:

- Legislative updates (Exhibits C, F, Q, R, S)
- Constituent engagement or town hall announcements (Exhibits E, J, P, M)
- Political commentary or campaign-related posts (Exhibits A, B, D, G, H, O, T)
- Notices regarding committee appointments or public service (Exhibits N, K, L)

Actual authority, however, requires a demonstrable legal or customary connection between the official's delegated powers and the alleged deprivation. *Lindk*e, at 199–201. Indeed, this court permitted the filing of a First Amended Complaint only if this and other deficiencies were cured.

Dkt. #21. Yet the First Amended Complaint fails to identify any statute, regulation, or longstanding custom vesting Defendant with authority to speak on behalf of the State of Illinois.

Although Defendant is an elected official, such status alone does not automatically confer authority to speak on behalf of the State. *Lindke*, at 199 ("[M]ore than some authority to communicate with residents is required; the alleged censorship must be connected to speech within the official's actual bailiwick." *Lindke*, at 199 Defendant, as an elected official, does not possess unilateral authority to speak *on behalf of* the State of Illinois.

Moreover, the Campaign Forum is a campaign Facebook page, not an official government account. It is the social media page of McCombie for Illinois, a candidate political committee supporting the candidacy of Tony McCombie. See: Dkt. #'s 13-1, 13-3, and 13-5. The Campaign Forum does not purport to exercise any governmental function, employ state authority, or use official insignia, seals, or letterhead. The Campaign Forum is titled "Tony McCombie." Dkt. #13-1. See also: https://www.facebook.com/mccombieforillinois. The "Intro" and "About" sections of the Campaign Forum identify the Facebook page as a "Public Figure" page, not an official State of Illinois government page. Dkt. #'s 13-1 to 13-2; See also: https://www.facebook.com/mccombieforillinois/about. The contact email address is tony@mccombieforillinois.com; not Defendant's official legislative email address. *Id.* The persons responsible for the Campaign Forum are McCombie for Illinois," not the State of Illinois. Dkt. #13-4; See also:

https://www.facebook.com/profile.php?id=100057878088324&sk=about_profile_transparency

The privacy and legal link in the " About" section of the Campaign Forum indicaes the page is a political page, which is paid for and promotes the political activity of McCombie for Illinois. Dkt. #13-3; See also: https://www.facebook.com/mccombieforillinois/about_privacy_and_legal_info. The disclaimer confirms its campaign and political purpose.

Consequently, the First Amended Complaint fails to plausibly establish that Defendant has authority to speak on behalf of the State in the Campaign Forum. Because Plaintiff has not alleged a statute, regulation, or longstanding custom vesting Defendant with authority to speak on behalf of the State of Illinois, the First Amended Complaint fails to state a claim upon which relief can be granted.

*b. The First Amended Complaint does not plausibly allege a purported exercise of state authority.*

Assuming arguendo that a law, regulation, or established custom authorized Defendant to speak on behalf of the State of Illinois, Plaintiff still fails to allege facts showing that Defendant purported to exercise such authority. *Lindke's* second prong requires a showing that the official "purported to use [her] state authority" when posting. *Lindke,* at 201. An official does not act under color of state law merely by discussing government affairs or communicating with constituents if speaking "in [her] own voice." *Id.* For example, posting information to raise public awareness or promoting prospects for re-election are not state actions. *Lindke*, at 203. Speech on a personal or campaign social-media account is presumed private absent "significant evidence" that a specific post was made in an official capacity. *Id.* at 202–03. Federal courts applying *Lindke* have emphasized that disclaimers, labels, and context can create a "heavy—though not irrebuttable—presumption" that a page is personal or political rather than governmental. *Raven v. Sajet*, No. 22-cv-2809 (CRC), 2024 WL 5118228, at *4 (D.D.C. Dec. 16, 2024) (citing Lindke, 601 U.S. at 201).* As this court aptly noted, that presumption "may be overcome only by significant evidence indicating that a post is official." Dkt. #21, c*iting Lindke, 601 U.S. at 202).* For a state action to occur, Defendant must specifically invoke her actual authority as state legislator for a Facebook post to become a state action. Dkt #21.

First and foremost, as pointed out *supra*, the First Amended Complaint does not allege that any of the Facebook posts referenced in paragraphs 25-44 and Exhibits A–T caused the purported violation. Dkt. #22, ¶¶23-48. The First Amended Complaint identifies no post that Plaintiff commented on, no dates (or even approximate dates) of Plaintiff's comments, deletions, or alleged

ban, and no description of the content of either Plaintiff's comments or Defendant's posts prompting them. *Id.* Paragraph 24 expressly states that the purpose of Exhibits A–T is to show that Defendant "uses the forum to communicate official business," not that any specific post caused the First Amendment violation. Dkt. #22, ¶24. But under *Lindke*, "each post must be analyzed to determine whether it is official or private." *Lindke*, at 202. Plaintiff was required to allege facts showing Defendant purported to exercise state authority through a specific Facebook post. He has not done so.

Even if a precise causal link between a specific Facebook post and the alleged violation is unnecessary, the Campaign Forum page's context demonstrates that it is political, not an official government forum. As noted above, the page identifies itself as a "Public Figure" account titled "McCombie for Illinois," lists a campaign email address rather than a legislative address, and contains disclaimers stating that it is paid for by the campaign committee. Dkt. #'s 13-1 to 13-4. Such indicators trigger the *Lindke* presumption that speech on the page is personal or political. Plaintiff offers no allegations to overcome that presumption.

Exhibits A-T themselves reinforce the conclusion that the posts are private in nature. See: Appendix A and Dkt. #22-1. These Facebook posts in Exhibits A-T are political commentary, campaign advocacy, legislative updates, town-hall invitations, photos, information sharing and reports of Defendant's daily activities. *Id.* They contain no directives about state policy or other exercises of governmental authority. *Id.* Indeed, many posts express partisan viewpoints or criticize political opponents, hallmarks of private political speech, not official state communication. *Id.*

Elected officials may use social media accounts to promote their legislative record or campaign agenda without converting such speech into state action. See *Campbell v. Reisch*, 986 F.3d 822, 826 (8th Cir. 2021)(finding social media posts on a legislator's campaign page about legislative updates or accomplishments do not constitute a public forum and remain private political expression).

Accordingly, the First Amended Complaint fails to allege any facts sufficient to overcome the strong presumption that a Facebook post on which Plaintiff commented constitutes private, political expression. Due to the above, the First Amended Complaint fails to state a claim upon which relief can be granted and dismissal is required.

**C. Facebook Posts Alleged in the First Amended Complaint are Time Barred or Irrelevant and Immaterial.**

Plaintiff's First Amended Complaint includes allegations concerning Facebook posts made on the Campaign Forum page before January 13, 2023, two years prior to the filing of the original Complaint. Dkt. #22, ¶¶38-44. Section 1983 claims are subject to a two-year statute of limitations in Illinois, as federal courts borrow the forum state's personal injury limitations period. *Wilson v. Garcia*, 471 U.S. 261, 276 (1985); 735 ILCS 5/13-202.

Plaintiff does not allege that these posts were part of a continuous pattern of ongoing violations, nor that deletions or other actions relate to these posts. As such, these claims cannot relate back to the filing of the original complaint and are time-barred. See *Beecham v. City of Anniston*, 42 F.4th 1130, 1135 (11th Cir. 2022) (discrete acts of speech deletion must occur within limitations period).

Further, because Plaintiff fails to identify any specific Facebook post that allegedly caused a First Amendment violation, paragraphs 24–44 of the First Amended Complaint and Exhibits A–T are immaterial and irrelevant**.** Under Federal Rule of Civil Procedure 12(f), the Court may strike such immaterial and irrelevant allegations. Striking these paragraphs and exhibits would leave the First Amended Complaint with the same operative deficiencies as the original complaint, which was already dismissed, and therefore the First Amended Complaint must be dismissed**.**

**D. Defendant Enjoys Qualified Immunity Because the Pleadings do not Allege a Clearly Established Right at the Time of the Violation.**

Qualified immunity shields a government official from suit for damages under Section 1983 when she "makes a decision that, even if constitutionally deficient, reasonably misapprehends the law

governing the circumstances she confronted." *Sabo v. Erickson*, 21-3332, 2025 WL 354484, at *3 (7th Cir. Jan. 31, 2025)[citations omitted]. To overcome a qualified immunity defense, plaintiffs must show "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Sabo v. Erickson*, 21-3332, 2025 WL 354484, at *3 (7th Cir. Jan. 31, 2025) [citations omitted]. A constitutional or statutory right is "clearly established" when the law is " 'sufficiently clear' that every 'reasonable official would understand that what he is doing' is unlawful." *Sabo v. Erickson*, 21-3332, 2025 WL 354484, at *4 (7th Cir. Jan. 31, 2025); [citations omitted].

That a campaign-related entity, McCombie for Illinois, is responsible for the Campaign Forum undermines any assertion that the page operates as a state action. The uncertainty surrounding this issue was recently highlighted by the Tenth Circuit in *Haulmark v. City of Wichita*, No. 22-3243, 2024 WL 3219677, at *8 (10th Cir. June 28, 2024). In *Haulmark*, the court remanded to the district court for ruling on whether posts made on a city mayor's campaign page constituted the exercise of governmental functions. The remand questioned the distinction in light of *Lindke* between state authority exercised via social media and private ownership of campaign pages, underscoring the continuing ambiguity in this area of law.

*Additionally, Campbell v. Reisch*, *infra*, determined that the following types of Facebook posts on a state representatives social media page were personal, and not state actions:

- Campaign updates and advocacy, including messages promoting the legislator's political platform and accomplishments.
- Criticism of political opponents, including partisan commentary on opposing candidates or parties.
- Legislative updates framed as political accomplishments, e.g., highlighting how certain bills were progressing or had passed to demonstrate fulfillment of campaign promises.
- Promotional posts about the legislator's record, designed to show voters she was active and effective.
- General communications with supporters and constituents, but not official directives or statements on behalf of the state.

*Haulmark* and *Campbell* illustrate that neither the Supreme Court nor the lower courts have provided sufficient clarity to put Defendant or similarly situated officials on notice regarding constitutional restrictions on campaign-related Facebook pages. As such, Defendant enjoys qualified immunity from suit as an individual. *Hanson v Levan, supra,* requires dismissal of the individual capacity claim with prejudice; Plaintiff's allegations do not and cannot state a violation of clearly established statutory or constitutional right.

## V. DISMISSAL SHOULD BE WITH PREJUDICE

Plaintiff was given leave to amend the complaint to address the deficiencies identified by the Court. Despite adding twenty exhibits spanning a five-year period, many outside the statute of limitations period or irrelevant and immaterial, Plaintiff fails to identify a single Facebook post in which Defendant purported to exercise state authority or a causal connection to any post**.** As established in Section IV, none of the exhibits satisfy either prong of *Lindke*. Additionally, Plaintiff fails to allege any facts indicating that a State law, regulation, policy, or custom caused the First Amendment Violation.

Courts have discretion to deny further leave to amend where a plaintiff, particularly one represented by counsel, has had prior opportunities to correct the pleading, yet fails to do so. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Alvarez v. City of Chicago*, 605 F.3d 445, 452–53 (7th Cir. 2010). Allowing Plaintiff to continue repleading after he was given notice of the deficiencies and unable to cure same in the First Amended Complaint would be futile, prejudice the Defendant, and cause undue delay. Accordingly, dismissal of the First Amended Complaint with prejudice is appropriate.

## VI. CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court dismiss Plaintiff's First Amended Complaint with prejudice.

Respectfully submitted,

TONY MCCOMBIE, State Representative and Illinois House Minority Leader

*/s/ Leslie Quade Kennedy*____________
One of her Attorneys

Leslie Quade Kennedy (ARDC # 6208186)
Michael J McGrath (ARDC # 6229820)
Patrick Roberts (ARDC # 6339589)
ODELSON, MURPHEY, FRAZIER & MCGRATH, LTD.
3318 W. 95th Street
Evergreen Park, IL 60805
(708) 424-5678
lkennedy@omfmlaw.com

Dated: November 3, 2025

## APPENDIX A

| AC ¶ #[1] | Exhibit | Post Date | Description of Facebook Post |
|---|---|---|---|
| 25 | A | 6/18/25[2] | Provides information on lawsuit being filed by Republican caucuses, shares political position on legislation. |
| 26 | B | 1/30/25 | Expresses personal  and political opinion on false claims made about Trump Administration's pause on federal funding. |
| 27 | C | 1/9/25 | Reported about swearing in and being named House Minority Leader. Expresses thanks and personal opinion about serving in office. |
| 28 | D | 1/6/25 | Expresses her personal and political position on lame duck session. |
| 29 | E | 1/2/25 | Provides information, date, time, and location, of upcoming Tele-Town Hall for Defendant and another republican representative. |
| 30 | F | 11/24/24 | Shares information about Defendant and fellow republicans' reaction to budget deficit.  Calls out Democratic Party for failure to manage state finances responsibly. |
| 31 | G | 11/14/24 | Provides information and shares a video about concerning moving Illinois  forward following the presidential election. Expresses personal and political opinions regarding  voter mandate against Democratic one party rule.. |
| 32 | H | 10/18/24 | Shares video of a republican candidate from another District. Expresses personal and political opinion about election and gerrymandering of that District. |
| 33 | I | 6/7/24 | Shares a video made by another State Representative which shares information about Democrats suspending rules to get a previously failed tax bill passed and expression his personal and political opinion about Democrats breaking this rule. |
| 34 | J | 5/29/24 | Expresses personal and political opinion about serving as House Minority Leader and about the political  action taken by Democrats that made another Republican legislator upset. |
| 35 | K | 3/27/24 | Provides information about an Ethics reform bill, and gives personal and political opinion regarding the need for same. |

[1] "AC ¶ # "means Amended Complaint (Dkt. #22) Paragraph number.
[2] Plaintiff's Amended Complaint, (Dkt. #22), incorrectly identifies the date of this post as 6/19/25.

| | | | |
|---|---|---|---|
| 36 | L | 11/17/23 | Provided information and expresses personal and political opinion about Governor's planned use of tax-payer money. |
| 37 | M | 3/23/23 | Provides information, date, time, and location, for Defendant's upcoming Facebook Live Legislative Update. |
| 38 | N | 9/10/21 | Shares information about Defendant's appointment to Domestic Violence Commission. Expresses opinion about role of this commission and its goals. |
| 39 | O | 8/31/21[3] | Shares News Headline and expresses personal and political opinion about same. |
| 40 | P | 8/30/21 | Reports on new redistricting map, provides link, and expresses personal and political opinion. |
| 41 | Q | 8/16/21 | Shared information about bills she sponsored |
| 42 | R | 8/12/21 | Shared information about bills she sponsored |
| 43 | S | 7/1/21 | Shared information about a bill signed into law and her personal and political opinion about same, expresses her personal opinion about representation of the District. |
| 44 | T | 5/28/21 | Shares the vote on the passing of the new legislative house map and a map image of Defendant's new District. Expresses personal and political opinion regarding continued representation for current district. |

[3] Plaintiff's Amended Complaint, (Dkt. #22), incorrectly identifies the date of this post as 8/21/25.